UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:09-cr-20303

    HONORABLE STEPHEN J. MURPHY, III

MICHAEL KELLER,

    Defendant.
                                   /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
TO DISMISS COUNT ONE OF THE INDICTMENT** (docket no. 28)

Defendant Michael Keller is charged in a twenty-six count indictment. The first count in the indictment alleges that Keller used facilities of interstate commerce in the commission of murder for hire, 18 U.S.C. § 1958, between June 16 and June 29, 2009. Keller moves to dismiss this count on the basis of both entrapment as a matter of law and manufactured jurisdiction. For the reasons stated below, the Court will deny Keller's motion.

**FACTUAL BACKGROUND**

All twenty-six counts alleged in the indictment arise out of a relationship between Keller and a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") undercover agent named Nether, believed by Keller to be the owner of a barbershop. During the nearly two-year relationship, Keller would provide Nether with various contraband including firearms, explosives, defensive armor, and drugs. On August 9, 2007, during a telephone conversation about gun trafficking, allegedly Keller advised Nether that if Nether "ever gets into some shit and needs someone taken up out of there, [Keller] does that also." Over the course of the next 20 months, Keller made additional similar statements about killing people, which the government argues demonstrate a propensity of violence and murder,

and which Keller describes as mere "puffing" in order to bolster his image and reputation with Nether.

Then, on June 23, 2009, Nether led Keller to believe there was a federal grand jury witness, located in Toledo, who could implicate Nether in gun trafficking activities. Keller then said that the witness should be killed and offered to do the job, quoting a price of $9,000. Keller promised, "I'm telling you it's a done deal . . . ." Throughout the sting operation, it was apparently understood by both Keller and Nether that Keller would find a hitman to carry out the murder; Keller himself would not murder the fictitious witness.

On June 25, 2009, Keller and Nether met again. Keller said he preferred to commit the murder in Detroit because he was unfamiliar with Toledo. Keller said that once the witness was in Detroit, "It's a done muthafucking deal, you get that muthafucka up here and it's over. He's going to catch one . . . take off half of the back of his head." Keller said he would require a $1,000 down payment. Keller also allegedly a case of cigarettes on Nether's desk. Nether had previously given Keller cigarettes as part of their gun and drug transactions and Keller remarked that he could sell the cigarettes on the black market for $3.00 per pack. Nether gave Keller three cartons of cigarettes as an advance payment on the murder-for-hire.

Two days later, on June 27, Nether called Keller from Toledo, Ohio and asked if he Keller would come to Toledo to kill the grand jury witness. Keller declined on account of being unfamiliar with the Toledo area. Nether told Keller that the witness would be returning to Detroit in a couple of days. Keller confirmed that he was ready to commit the murder. Keller specifically asked Nether for more bootleg cigarettes to sell. Keller agreed to accept cigarettes to reduce the $1,000 down-payment on the murder for hire. On June 29, Keller and Nether met for the last time. Keller told Nether not to worry, that he "would

have the situation worked out," and that all anyone would hear is "pow, pow, pow." Keller allegedly accepted an internet-generated map ("Google map") showing the present location of the fictitious grand jury witness and a picture of the target, after which Keller said, "That nigga's hit." Federal agents arrested Keller after he accepted $800 and a case of cigarettes manufactured outside of the state of Michigan as consideration for the murder for hire.

## DISCUSSION

Keller moves to dismiss count one of the indictment pursuant to Fed. R. Crim. P. 12(b)(3) - alleging a defect in the indictment. Keller argues that count one should be dismissed for two reasons: 1) he has demonstrated, as a matter of law, that he was entrapped by government agents; and 2) the government manufactured jurisdiction and created a federal crime out of what was otherwise a purely local offense. For the reasons stated below, the Court will deny Keller's motion to dismiss.

I. Entrapment as a Matter of Law

Keller argues that count one should be dismissed because he was entrapped as a matter of law. "Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." *Jacobson v. United States*, 503 U.S. 540, 548 (1992) (citing *Sorrells v. United States*, 287 U.S. 435, 442 (1932)). A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63 (1988). Predisposition – the primary element in the defense – asks whether the defendant was an "unwary victim" or an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime. *Id.* The element of government inducement is relevant primarily insofar as it relates to

3

predisposition. *Cf. United States v. Tucker*, 28 F.3d 1420, 1426 (6th Cir. 1994) (recognizing that Supreme Court has rejected "objective theory" of entrapment defense, which focuses solely on character of government's activity, that no Supreme Court authority exists recognizing theory, and holding that Sixth Circuit would not recognize objective theory); *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984) (focusing on absence of predisposition in articulating standard for establishing entrapment as matter of law). If the defendant is not predisposed to commit the crime, more government inducement is necessary for him to commit it; if he is predisposed, less inducement is necessary. If the defendant raises the defense of entrapment, the government must establish predisposition to commit the offense beyond a reasonable doubt. *Jacobson*, 503 U.S. at 549.

The question of entrapment, specifically, of predisposition, is generally one for the jury, rather than one for the court. *Mathews*, 485 U.S. at 63. Proving entrapment as a matter of law is possible, but is extremely difficult. *United States v. Barger*, 931 F.2d 359, 366 (6th Cir. 1991). The Sixth Circuit has articulated the standard:

> [I]n order for a claim of entrapment as a matter of law to succeed, the testimony and facts must be undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, the undisputed evidence must demonstrate a "patently clear" absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.

*United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984) (internal citations omitted). Further, the Court must view the evidence in the light most favorable to the government and resolve all reasonable inferences in its favor. *United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir. 1984).

The Sixth Circuit has recognized five factors as relevant in considering predisposition: 1) character or reputation of the defendant, including a criminal record; 2) whether the

4

suggestion of criminal activity was initially made by the government; 3) whether the defendant was engaged in the criminal activity for profit, the existence of which in a prosecution for murder-for-hire carries little weight because profit is an element of the offense; 4) whether the defendant evidenced a reluctance to commit the offense, overcome only by repeated government inducement or persuasion; and 5) the nature of the inducement or persuasion supplied by the government. *Barger*, 931 F.2d at 366. Keller argues in his brief why all five factors weigh heavily in his favor. His defense is simply that he was a con man, not a hitman; rather than intending to commit murder, he intended to steal any consideration Nether provided him.

The government disagrees and argues that entrapment as a matter of law fails for three reasons. First, "the ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson*, 503 U.S. at 550. Here, once Nether mentioned the grand jury witness, Keller, the very same day, volunteered to have the witness killed for a specific price, and accepted a down payment within one week. Second, there is no evidence of government inducement because Keller offered himself out as a hitman first, before Nether told him about the fictitious grand jury witness. Third, even if there is evidence of inducement, there is overwhelming evidence of predisposition from the various statements made by Keller throughout the 20-month period. Indeed, the government claims that the evidence of predisposition is so great that it plans to oppose any proposed jury instruction of entrapment.

Considering the evidence offered by each side thus far, the Court finds it has no choice but to reject Keller's claim of entrapment as a matter of law. Keller has not met his burden under *Pennell*. First, the testimony and facts are disputed. There is considerable dispute as to whether Keller, when he allegedly made the inculpatory statements to Agent

5

Nether, was serious about committing murders. Whether the evidence at trial concerning Keller's statements come from Keller himself while testifying, Nether, or Keller through an audio recording of his actual statements, determining whether Keller was serious requires a credibility determination. Under the Sixth Circuit's standard for entrapment as a matter of law, requiring the Court to resolve credibility of the witness or find any other fact is fatal to a finding of entrapment as a matter of law. Second, Keller has not demonstrated a "patently clear" absence of predisposition to commit the murder, especially when all reasonable inferences are viewed in the light favorable to the government. The primary question at trial with respect to Keller's entrapment defense will be whether Keller was "puffing" or was serious when he made statements about killing people. This is a question for the jury at the close of the evidence, not the Court on a motion to dismiss. On a motion to dismiss based on entrapment as a matter of law, the Court must assume Keller was serious, which demonstrates a ready commission of the crime, and consequent failure of his entrapment defense. Therefore, the Court rejects Keller's attempt to establish entrapment as a matter of law. Keller is free to raise the defense at trial.

II. Manufactured Jurisdiction

Keller's alternative argument in support of dismissing the indictment is that the government improperly manufactured jurisdiction in this case, and did so solely for the purpose of testing an unprecedented expansion of federal jurisdiction never before recognized by any court. Def.'s Br. at 13, 16. Keller's briefing seems to treat manufactured jurisdiction as an independent doctrine, providing an independent basis for acquittal, similar to a due process claim of "outrageousness," which bars the government from invoking judicial process to obtain a conviction. *See, e.g.*, Def.'s Br. at 14-15; Def.'s Reply. Br. at

6

3. Keller's focus on the government's conduct -- rather than the lack of evidence regarding his own conduct -- demonstrates this approach. Def.'s Br. at 15-17.

For the reasons discussed below, the Court declines to treat the concept of manufactured jurisdiction as an independent doctrine. Rather, the Court considers it to be a defense insofar is it attacks the sufficiency of the government's evidence with respect to the interstate element of the offense charged. With these principles in mind, the Court considers the factual and legal sufficiency of the three alleged bases of federal jurisdiction and concludes that the jurisdictional allegations are sufficient to withstand Keller's motion to dismiss. Though it denies the motion, the Court registers some hesitancy concerning the proofs of the jurisdictional elements in the case and will closely consider the government's proofs at trial pursuant to Fed. R. Crim. P. 29.

*A. General Principles*

To establish murder for hire, the government must prove beyond a reasonable doubt that Keller "use[d] or cause[d] another to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed ... as consideration for the receipt of ... anything of pecuniary value." 18 U.S.C. § 1958. The government alleges three separate ways in which Keller's actions satisfy the "facility of interstate commerce" element: 1) interstate travel of consideration; 2) use of an internet-mapping program; 3) telephone communications.

The defense of manufactured jurisdiction, as alleged by Keller, is the notion that it is impermissible for federal agents to contrive an incidental federal jurisdictional nexus for the purpose of transforming a local offense into a federal crime, *e.g.* by an undercover agent placing an interstate telephone call to the defendant solely for the purpose of establishing federal criminal jurisdiction. This notion had its genesis in *United States v. Archer*, 486

7

F.2d 670 (2d Cir. 1973), in which the Second Circuit found that interstate telephone communications that were "manufactured by the Government for the precise purpose of transforming a local bribery offense into a federal crime" could not meet the federal jurisdictional element of the Travel Act, 18 U.S.C. § 1952(a)(3). In that case, a federal agent named Bario, belatedly realizing that the conduct he was investigating (the receipt of bribes by Archer, a local official) was not a federal crime, placed phone calls to Klein, a lawyer acting in concert with Archer, from another state in order to induce a violation of the Travel Act. Klein did not take the calls, but Bario left a message that Klein should call him back, and Klein did so. *Id.* at 673-74, 681-82. The court described it as a case of "manufactured jurisdiction." *Id.* at 682.

The holding in *Archer*, however, has been carefully limited by the Second Circuit, and the case considered to have addressed a proper principle of federal criminal procedure, and not due process. *United States v. La Porta*, 46 F.3d 152, 160 (2d Cir. 1994); *Archer v. Comm'r of Correction*, 646 F.2d 44, 46 (2d Cir. 1981). Moreover, the Second Circuit later stated that "'manufactured jurisdiction' as an independent doctrine is a 'dubious concept.'" *United States v. Wallace*, 85 F.3d 1063, 1065 (2d Cir. 1996).

The Sixth Circuit has had occasion to address the so-called "*Archer* rule." *See, e.g.*, *United States v. Burdette*, 86 Fed. Appx. 121, 127-28 (6th Cir. 2004) (unpublished). Though it has not ever expressly rejected the defense *in toto*, the Sixth Circuit likewise has never invoked the defense to reverse a conviction. The Sixth Circuit has tended to treat claims of manufactured jurisdiction as challenges to the sufficiency of the evidence post-verdict, as opposed to treating them as an independent doctrinal defense similar to an affirmative defense. *See, e.g.*, *Burdette*, 86 Fed. Appx. at 125-28 (treating defendant's claim of manufactured jurisdiction under the heading of "Sufficiency of the Evidence" and

8

recognizing that courts that have construed *Archer* have found that manufactured jurisdiction as an independent doctrine is a dubious concept); *United States v. Degan*, 229 F.3d 553, 557 (6th Cir. 2000) *United States v. Hall*, 165 F.3d 29, *4 (6th Cir. 1998) (unpublished table decision); *United States v. Williams*, 12 F.3d 215, *2-*4 (6th Cir. 1993) (unpublished table decision); *United States v. Graham*, 856 F.2d 756, 760-61 (6th Cir. 1988).

Perhaps, as noted in *United States v. Podolsky*, 798 F.2d 177, 181 (7th Cir. 1986), "the result in *Archer* is best explained on the ground that the facts did not show a federal crime," rather than that the defendant affirmatively established that the government "manufactured" jurisdiction. The *Podolsky* court further stated:

> The course of decisions casts doubt if not on the result in Archer then on the vitality of the independent principle announced there that forbids the "manufacture" of federal jurisdiction in circumstances not constituting entrapment and not canceling any element of the crime such as criminal intent.

*Id.*; *United States v. Skoczen*, 405 F.3d 537, 543 (7th Cir. 2005) (citing *Pokolsky*). The Court agrees with the Seventh Circuit's analysis of *Archer* in treating the "defense" of manufactured jurisdiction as one of insufficiency of evidence, used to discount the government's proof of the elements of the offense; rather than as an affirmative defense. Furthermore, the Court considers this analysis to be consistent with the Sixth Circuit's overall approach, even though the Sixth Circuit has, the Court concedes, not expressly formulated its approach to manufactured jurisdiction in this way. *But see Degan*, 229 F.3d at 556 ("[Defendant's] real argument is that the evidence presented at trial was insufficient for a rational trier of fact to conclude beyond a reasonable doubt that [defendant] caused [government informant] to travel in interstate commerce for the purpose of killing [defendant's] ex-wife.").

9

Considered in light of the principles stated above, Keller's challenge at the pre-trial stage under Fed. R. Crim. P. 12(b)(3) -- used to challenge the validity of an indictment -- is not viable. In addition to bringing such a challenge on appeal, a defendant may bring a sufficiency-of-the-evidence claim at the trial level "[a]fter the government closes its evidence or after the close of all evidence." Fed. R. Crim. P. 29. But, a defendant generally does not bring such a challenge *prior* to trial. Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request *that the court can determine without a trial of the general issue*." A sufficiency-of-the-evidence claim necessarily requires a "trial of the general issue.") (emphasis added).

Keller, however, is bringing his sufficiency-of-the-evidence challenge before trial because, he argues, the facts here are so compelling. At least one District Court has persuasively noted, however, that such a defensive theory does not bear on whether or not, at the outset, the indictment sufficiently states an offense to require trial; rather the defendant may defend against the indictment at trial by attempting to demonstrate reasonable doubt as to whether the evidence produced at trial satisfies the jurisdictional element of the offense. *See United States v. Cain*, 413 F. Supp. 2d 189, 195 (W.D.N.Y. 2005).

Accordingly, to the extent Keller argues that the government "manufactured jurisdiction" in this case, he essentially argues the evidence is insufficient for a rational trier of fact to find beyond a reasonable doubt that the jurisdictional element of section 1958(a) is satisfied, and his challenge is premature. Accordingly, the Court rejects the challenge at this time.

Keller is free to renew his motion at the close of the government's evidence or at the close of all the evidence under Rule 29. The Court will monitor the proofs at trial and will

consider Keller's Rule 29 motion if and when renewed. The parties should be mindful that in determining whether establishment of a jurisdictional element is sufficient, the Court is guided by the Sixth Circuit's recognition that a defendant's "use of a facility of interstate commerce," need not be an "essential element of the scheme, but need only facilitate or further the unlawful activity." *United States v. Hall*, 165 F.3d 29, *4 (6th Cir. 1998) (unpublished table decision) (quoting *United States v. Graham*, 856 F.2d 756, 761 (6th Cir. 1988)). Furthermore, in considering whether the defendant "used" the facility, the government must establish that the defendant "freely participate[d] in the jurisdictional act." *United States v. Peters*, 952 F.2d 960, 963 n.6 (7th Cir. 1992).

   B.   *Legal Sufficiency of the Jurisdictional Nexuses*

In addition to the factual sufficiency of the evidence, Keller's motion also appears to challenge the legal sufficiency of the three alleged bases for federal jurisdiction in count one. That is, assuming that Keller used the map, the phones, and the cigarettes, these facts are not legally sufficient to establish "use of a facility of interstate commerce." For the reasons stated below, the Court rejects these challenges at this time and finds that the factual allegations in the indictment with respect to federal jurisdiction are facially sufficient to support jurisdiction.

First, Keller argues that the interstate travel of Newport Cigarettes, used as partial consideration in the murder for hire plot, cannot satisfy the interstate travel component of 18 U.S.C. § 1958. Def.'s Br. at 17. Section 1958(a) of the Code provides:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, *or uses or causes another ... to use the mail or any facility of interstate or foreign commerce*, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, [shall be punished].

11

*Id.* (emphasis added).

As Keller persuasively argues, the mere interstate travel of consideration, by itself, would seem to be an insufficient basis for federal jurisdiction. The statute does not require that the consideration have traveled in interstate commerce, so as a matter of statutory construction, attempting to establish jurisdiction on that basis alone would be legally insufficient for a charge under section 1958. The government argues, however, that the cigarettes played a more essential role in the murder for hire plot and that their presence in the plot was not gratuitous. The government suggested at the hearing on this motion that the cigarettes in this case were specifically requested by Keller as partial consideration for the murder for hire. To the Court's knowledge, no cigarettes are produced in Michigan. Therefore, the cigarettes would had to have travelled from outside the state, at Keller's request, using facilities of interstate commerce, which facilities, Keller would have "caused another to use." Government counsel's statements indicate the government has evidence to prove that Keller caused another to use a facility of interstate commerce in this way. The Court finds this allegation is sufficient to establish the jurisdictional element of the murder for hire statute at least at the pre-trial stage. As stated above, however, the Court will closely monitor the proofs at trial. If at the close of all evidence, the evidence does not suggest that Keller used or caused another to use a facility of interstate commerce to provide him with cigarettes as partial consideration, the Court will, upon motion, reconsider whether the cigarettes satisfy the jurisdictional element. If they do not, the Court will issue a curative instruction to the jury regarding any evidence relating the interstate nature of the cigarettes to prevent any confusion, and will strike the irrelevant surplus language in the indictment before instructing the jury on the charge.

Second, Keller argues that the Court should find that the use of internet mapping programs in this instance does not satisfy the statute's jurisdictional element. Def.'s Br. at 19. The indictment at count one alleges, among other things, that Keller used facilities of interstate commerce, including but not limited to, internet mapping programs, with the intent that a murder be committed. The internet is clearly a "facility of interstate commerce." *See United States v. Fuller*, 77 Fed. Appx. 371, 379 (6th Cir. 2003) (unpublished) ("the interstate commerce connection was established in this case by indisputable evidence that [defendant] used both the Internet and the telephone, facilities or means of interstate commerce, in committing the offense."). Accordingly, the indictment's allegation that Keller "used" the internet in the murder for hire plot is sufficient and will not be stricken from the indictment. Without hearing the proofs, the Court is unable to conclude, as a matter of law, that Keller did not "use the internet" to further his commission of murder for hire. Again, the Court will monitor the proofs at trial and if the facts prove insufficient to support a finding of Keller's use of the internet, the Court will take appropriate measures.

Third, Keller challenges the government's attempt to base federal jurisdiction on Keller's use of a telephone. The indictment alleges that Keller used facilities of interstate commerce, including but not limited to interstate telephone communications, with the intent that a murder be committed. It is well-established that telephones, even when used *intra*state, constitute instrumentalities of interstate commerce. *See United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999); *United States v. Marek*, 238 F.3d 310, 318 n.35 (5th Cir. 2001) (citing cases, including *Weathers*). Keller recognizes as much in this brief. Def.'s Bf. at 20. Further, there is no distinction between initiating and receiving telephone calls for purposes of finding "use." *See Graham*, 856 F.2d 761. Keller argues, however, that speaking on the telephone cannot suffice where, as here, the communication

13

has been initiated by the government for the sole purpose of establishing jurisdiction. The argument is essentially that Keller did not "use" the telephone to further the plot. This argument, however, is again directed to a challenge of the sufficiency of the evidence and for the reasons stated above, the Court will deny Keller's challenge at this juncture, and anticipate a Rule 29 motion at the close of the government's case.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court will deny Keller's motion to dismiss count one of the indictment.

**WHEREFORE** it is hereby **ORDERED** that Keller's motion to dismiss count one of the indictment (docket no. 28) is **DENIED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 6, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 6, 2010, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager