**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MICHAEL KELLER,**

   **Petitioner,**      **Case No: 09-cr-20303**

**vs.**           **District Judge Stephen J. Murphy, III**

            **Magistrate Judge Mona K. Majzoub**

**UNITED STATES OF AMERICA,**

   **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

   Petitioner, Michael Keller, is currently a prisoner at Milan FCI in Milan, Michigan. Before the Court is Petitioner's Motion to Vacate under 28 U.S.C. § 2255.[1]  (Docket no. 89.) Petitioner filed an Addendum to Memorandum of Law (docket no. 93), Respondent filed a Response (docket no. 100), and Petitioner filed a Rebuttal (docket no. 102) along with a Supplemental Memorandum (docket no. 109).  Petitioner's Motion has been referred to the undersigned for determination.  (Docket no. 92.)  Because the record in this case conclusively shows that Petitioner is not entitled to relief under 28 U.S.C. § 2255, an evidentiary hearing is not required to resolve the merits of this action.  28 U.S.C. § 2255(b).  Therefore, the undersigned issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(b).

**I.**  **Recommendation**

   For the reasons stated herein, the undersigned recommends that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (docket no. 89) be **DENIED**.

_____

[1] Petitioner's Memorandum of Law is included with his Motion but is also noted separately on the docket in this matter.  (*Compare* docket no. 85, *with* docket no. 89.)

1

II.     **Report**

    A.     **Facts and Procedural History**

As set forth by Respondent, from July 2007 through February 2009, Petitioner "sold nine firearms, ballistic vests, a grenade, heroin, marijuana, powder cocaine, and crack cocaine to [undercover] Alcohol Tobacco Firearms and Explosives (ATF) agents and a confidential informant." (Docket no. 100 at 4.) Petitioner then accepted $800 in cash and 21 cartons of cigarettes as a down payment for the murder of a grand jury witness. (*Id.*) Petitioner, however, holds himself out as a "gopher," a "jack-of-all-trades," who approached the new owners of the "Motown Barbershop" (i.e., the undercover ATF agents) looking for work in a down economy. (Docket no. 89 at 3.) Regardless of how Petitioner is characterized, he was charged in a 26-count indictment with the following:

- One count of murder for hire, in violation of 18 U.S.C. § 1958;

- Seven counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1);

- Seven counts of unlawful dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A);

- One count possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k);

- One count of being a felon in possession of an explosive, in violation of 18 U.S.C.§ 842(i);

- One count of unlawful dealing in explosives, in violation of 18 U.S.C. § 842(a)(1);

- Two counts of being a violent felon in possession of body armor, in violation of 18 U.S.C. § 931; and

- Six counts of distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1).

2

(*See* docket no. 100 at 4.)

The Parties entered into a Rule 11 Plea Agreement under which Petitioner would plead guilty to two counts of being a felon in possession of a firearm and one count of distributing more than five grams of crack cocaine, with the remaining 23 counts being dismissed.   (*See id.* at 4-5.) Paragraph 2B agreement contained the following provision with regard to Petitioner's sentencing guidelines and range:

> There are no sentencing guideline disputes.   Defendant's guideline range is **188-235 months**, as set forth on the attached worksheets.   If the Court finds:
>
> > (a) That the defendant's criminal history category is higher or lower than reflected on the attached worksheets, . . .
>
> .      .      .
>
> and if any such finding results in a guideline ranger higher or lower than **188-235 months**, the higher or lower guideline range becomes the agreed range.

(Docket no. 60 at 4.)   For its part, the government agreed to make "a non-binding recommendation that the sentence of imprisonment be no more than the high-end of the sentencing guideline range as determined by Paragraph 2B."   (*Id.* at 5.)   Petitioner also agreed that "[i]f the sentence imposed does not exceed the maximum recommended by Part 3 of [the] Agreement, [he] waive[d] any right he ha[d] to appeal his conviction or sentence."   (*Id.* at 7.)   Petitioner and his attorney crossed out the word "no" in the first sentence of paragraph 2B and noted on the final page of the Agreement that "[t]he parties have not reached agreement concerning the applicable guideline range."   (*Id.* at 4, 16.)

Due to a "divergent treatment given to several of [Petitioner's] prior convictions," Petitioner's presentence report recommended a Guideline range of 135 to 168 months' imprisonment, "based on an offense level of 33 and a criminal history category of I."   (Docket no.

63 at 5-6.)   The government conceded that the probation department was "technically correct that

defendant score[d] in criminal history category I, resulting in a correctly-calculated Guidelines

range of 135-to-168 months' imprisonment," but it argued for an upward departure to "at least 235

months' imprisonment, the high-end of the Guidelines range agreed to by the defendant in his Rule

11 plea agreement."   (*Id.* at 1, 7.)   The Court sentenced Petitioner to 168 months' imprisonment

and 5 years of supervised release.   (Docket no. 65 at 3, 5.)

> Petitioner appealed his sentence, arguing that
>
> (1) The Government's breach of the plea agreement require[d] . . . remand for
> resentencing; (2) his objection to the sentencing calculations limited the scope of
> his waiver of appeal; (3) the Government's breach released him from his waiver of
> appeal under the plea agreement; and (4) the district court's application of the
> four-level enhancement was error.[2]

*United States v. Keller*, 665 F.3d 711, 713 (6th Cir. 2011).   The government conceded that it had

breached the plea agreement and that the breach was plain error, but the court found that the error

did not affect Petitioner's substantial rights.   *Id.* at 714-15.   The court reasoned that when the

trial court explicitly adopted the presentence report Guideline range of 135 to 168 months, that

Guideline range became the "agreed range" under Paragraph 2B of the plea agreement.   *Id.* at

715.   Thus, when the trial court sentenced Petitioner to 168 months' imprisonment, Petitioner

"'obtained the benefit contemplated by the deal anyway.'"   *Id.* (quoting *Puckett v. United States*,

556 U.S. 129, 129 S.Ct. at 1423, 1432-33 (2009)).   The court noted:

> The upper limit (168 months) of the guideline range from the presentence report
> was lower than the lower limit (188 months) of the range originally contemplated
> by the plea agreement. His sentence is *lower* than that anticipated by the plea

---

[2] Petitioner's dispute over the guideline range turned on his objection that it was improper
to assess him a four-point increase for "possession of a firearm in connection with a drug
trafficking offense" because he never sold drugs and firearms as part of the same transaction.
(*See id*. at 7 n.2.)

4

agreement at the time he signed it.  Most importantly, his sentence does not exceed the upper limit of the presentence report calculation which, when adopted by the district court, became the new agreed range.  Keller cannot say he did not receive "the benefits contemplated by the deal," even though he did not receive them via the performance he expected of the Government.

*Id.* (emphasis in original).   The court further found that Petitioner's crossing out of the word "no" in his plea agreement and his notation that "[t]he parties have not reached agreement concerning the applicable guideline range" did not limit the scope of his waiver of appeal and that the Government's breach of the plea agreement did not release Petitioner from his waiver of appeal. *Id.* at 715-19.

### B.    Petitioner's Claims

Petitioner filed his Motion to Vacate under 28 U.S.C. § 2255 raising the following grounds for relief:

1. "Petitioner's counsel was ineffective and deficient during the plea bargain and post-conviction stages violating the Sixth Amendment of the U.S. Constitution" (docket no. 89 at 8);

2. "Petitioner avers that the government breached it's (sic) plea agreement" (*Id.* at 12);

3. "Conviction was obtained by plea of guilty which was unlawfully induced and not made voluntarily nor with understanding of the nature of the charges" (*Id.* at 14); and

4. "Calculation of sentencing enhancements are (sic) not applicable to petitioner" (*Id.* at 16).

The Government asserts that (1) Petitioner's ineffective-assistance claims fail because (a) an attorney is not required to make a motion that has no chance of success and (b) Petitioner cannot show that "but for" his attorney's failure to object at sentencing, the outcome would have been different; (2) Petitioner's breach-of-plea-agreement argument is precluded because he argued it at

the Sixth Circuit; (3) Petitioner's remaining arguments have been procedurally defaulted or waived because he did not raise the voluntariness argument on appeal and he waived his right to challenge the Guidelines calculation in his plea agreement.   (Docket no. 100.)   Petitioner responds by contending that the Government's arguments with regard to his latter 3 grounds for relief are "misplaced," as "the entire § 2255 submission was prefaced with an ineffective assistant (sic) of counsel dissertion (sic) [, so] every challenge was not meant to be reviewed solely in an individual capacity but within the perview (sic) of ineffective assistance of counsel as well." (Docket no. 102 at 2.)

**C.     Standard**

A petitioner who files a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 must demonstrate that there was an error of constitutional magnitude, the sentence was imposed outside the statutory limits, or there was an error of fact or law so fundamental as to render the entire proceeding invalid.  *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir.2001) (citation omitted).   To prevail on a motion to vacate, set aside, or correct sentence alleging constitutional error, the petitioner must show that the error had a substantial and injurious effect or influence on the proceedings.   *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

**D.     Analysis**

**1.     Petitioner's Ineffective Assistance Claims**

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial.   *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the

6

defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. That is, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the Strickland test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citations omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." *Id.* at 694.

Petitioner argues that his defense attorney "offered the 'standard, sub-standard' basic counsel[, which was to] plead guilty or go to jail for life." (Docket no. 89 at 9.) Petitioner contends that his attorney recommended that he accept a plea deal "without the benefit of conducting a thorough investigation" and that he "white-washed over as incidental" Petitioner's assertions that he had a mental condition (which Petitioner refers to as diminished capacity) and

that Petitioner only played the "minimal role as a gopher for the undercover agents." (*Id.*) Petitioner notes, however, that "[w]hat is at issue" is defense counsel's failure to object to the breach of the plea agreement by the Government. (*Id.* at 10.) He argues that his attorney erred when he "sat quietly and allowed the AUSA to aggressively argue for an upward departure in spite of their promise not to." (*Id.*) Petitioner argues that this failure to object satisfies the performance prong of *Strickland* and that the prejudice prong of *Strickland* is satisfied because the plea bargaining and sentencing stages are particularly critical. (*Id.* at 11.)

As Respondent argues, however, regardless of the performance prong, Petitioner cannot show that "but for" his counsel's failure to object, the outcome would have been different. (Docket no. 100 at 10-11.) As the Sixth Circuit discussed on Petitioner's appeal, Petitioner cannot show prejudice because the sentence he received was exactly the sentence he bargained for. *Keller*, 665 F.3d at 715. Likewise, even if Petitioner's counsel had objected to the Government's breach during Petitioner's sentencing hearing, there is no evidence to suggest that the Court would have sentenced Petitioner differently. And in that light, Petitioner neither suggests what alternative action the Court would have taken if his attorney had objected nor does he ask for specific performance or a recession of the plea agreement. Instead, Petitioner attempts to use this claim as a way to bootstrap a resentencing, "taking into consideration his diminished mental stability and capacity." (Docket no. 89 at 18.) Petitioner cannot meet his burden with regard to this issue; therefore, his Motion should be denied.

### 2.    Breach of Plea Agreement

On Petitioner's appeal, the Government conceded that it breached the plea agreement in this matter. *Keller*, 665 F.3d at 714. Petitioner raises this breach as an independent ground for

relief under Section 2255.   But "[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances," *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir.1996) (internal citations and quotation marks omitted), or "an intervening change in the case law." *Wright v. United States*, 182 F.3d 458, 467 (6th Cir.1999).   The Sixth Circuit already determined that Petitioner was not prejudiced by the Government's breach, and Petitioner has pointed to neither exceptional circumstances nor an intervening change in case law to warrant review on his Motion.   And to the extent Petitioner now asserts this argument under the umbrella of his ineffective assistance claims, his argument fails for the reasons discussed above. Therefore, Petitioner's Motion should be denied in this regard.

### 3.    Petitioner's Guilty Plea

Respondent argues that Petitioner's claim with regard to the knowing, intelligent, and voluntary nature of his plea is procedurally defaulted because he failed to raise the claim on direct appeal.   (Docket no. 100 at 12.)   To the extent that petitioner raises this claim as an independent ground for relief, Respondent is correct.   *See Harris v. Reed*, 489 U.S. 255, 258 (1989). Nevertheless, while Petitioner makes no such assertion in his initial Motion, he contends in his Reply brief that he intended to bring this argument as part of his ineffective-assistance claim. (*See* docket no. 102.)   Such a tactic is neither improper nor disfavored.   *Accord Brazil v. U.S.*, No. 07-20531, 2013 WL 5476249, *3 (E.D. Mich. Oct. 1, 2013) (Luddington, J.) (holding that the petitioner was entitled to bring claims for ineffective assistance of trial and appellate counsel related to a *Batson* challenge even where the petitioner had procedurally defaulted on the *Batson* challenge itself, because "'the two claims are analytically distinct'" (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005))).   Thus, given the liberal construction afforded a *pro se*

9

prisoner's pleadings, the undersigned will consider Petitioner's argument.

Petitioner asserts that he "did not receive adequate notice of the offense, since he was; first, a man with a diminished capacity to understand and comprehend what was being told to him . . . and second . . . because of his diminished capacity, did not comprehend that the elements of his charges of felon in possession . . . and distributing more than five grams of crack cocaine . . . where (sic) specific elements of his offense, hence his plea was involuntary."   (Docket no. 89 at 14.) He further asserts, in the ineffective-assistance context, that his attorney "had Petitioner sign a plea agreement, even though he knew that the Petitioner had the mental capacity and understanding of an adolescent child at best."   (*Id.* at 15.)

The psychological report on which Petitioner relies to make his assertions notes that Petitioner suffers from dyslexia and that he took some special-education classes in high school. (Docket no. 93 at 5, 6.)   The report adds that Petitioner's IQ is in the "Borderline" range and that his scores, "in general, indicate that [he] tends to be highly concrete in his approach to problem solving and, therefore, quite limited in terms of his capacity to generalize meaning and/or solutions from one similar situation to another."   The psychologist opined as follows:

> [Petitioner] is a criminal defendant with a longstanding history of legal entanglements with the criminal justice system, beginning in adolescence and continuing throughout his adult life.   This man also has a longstanding history of learning disabilities and significant problems in terms of acquiring language and in terms of language processing skills due to his suffering from Dyslexia and Specific Learning Disabilities.   Based on these data, Mr. Keller's, essential level of intelligence is, perhaps, best viewed as being, roughly, in the Borderline [Mentally Retarded] range with some mild limitations relative to his problem solving and social skills capacities.   Historically, Mr. Keller presents with a very serious and chronic substance abuse dependency.
>
> Mr. Keller is not currently receiving psychiatric treatment, despite his being twice psychiatrically hospitalized in the late 90s for suicidal ideation and suicidal gestures and, despite his being identified as being mentally impaired by Social

Security Disability.   However, it is certainly not apparent from these data that he would, necessarily, benefit from psychotropic medications or from any other mental health interventions.   By-and-large, the defendant's "issues," psychological and/or social, are more the consequence of character pathology over and above other vicissitudes of his early development or emotional life.   That is, his "choices" are consistently dominated by passive-aggressive and antisocial mechanisms over and above psychological/emotional conflicts.   As such, unfortunately, little benefit is likely to be derived from psychiatric intervention, except when he is in the throws (sic) of an emotional crisis.

On the other hand, these data, plainly, underscore that this man understands right from wrong and he would not be materially limited in terms of appreciating that the behavior he allegedly exhibited in connection with these offenses would be considered by others to be both wrong and illegal.

(*Id.* at 9-10.)

In his Sentencing Memorandum and at Petitioner's sentencing hearing, defense counsel

notified that Court that Petitioner suffered from mental limitations and learning disabilities:

[Petitioner] has been treated for depression intermittently over the years and has received treatment for his depression. Mr. Keller was hospitalized repeatedly over ten years ago for depression at Detroit Receiving Hospital and Henry Ford Hospital. According to Detroit Riverview Hospital records, he was hospitalized from December 30, 1997 to January 2, 1998, with a diagnoses of depression-not otherwise specified, personality disorder-antisocial, alcohol dependence, and cocaine dependence. Oakwood Hospital in Dearborn, Michigan advised the probation department that Mr. Keller had received psychiatric treatment at Heritage Hospital in 1997.

Mr Keller reported to the probation officer that he has suffered mental and emotional problems for years that were associated with his learning problems. He has been diagnosed with Dyslexia. The pre-sentence reports states that records from W.J. Maxey Boys Training School confirmed Mr. Keller attended special education classes while held at the training school, attending tenth grade learning disabled classes. His reading comprehension was listed between a first and fourth grade level. According to Mr. Keller his father may have had a history of similar delayed or reduced academic development.

(Docket no. 62 at 11; *see also* docket no. 69 at 26, 29-30.)   Thus, Petitioner's argument that his

attorney did not bring this information to the Court's attention is factually inaccurate.   Moreover,

11

to the extent that Petitioner asserts that he did not understand the nature of his plea, his argument is undermined by his own contrary statements to the Court.   (*See* docket no. 68 at 3, 6, 11, 12-13, 18, 21, 23.)

And to the extent that Petitioner believes that his attorney should have specifically argued for "diminished capacity," Petitioner cannot meet his burden under *Strickland* where such an argument had no chance of success.   *See United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004) ("Failing to make a motion . . . that had no chance of success fails both prongs [of *Strickland*].   First, counsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues.   Second, it is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome").   The U.S. Sentencing Guidelines Manual § 5K2.13 sets out the standards for a diminished-capacity consideration: "A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13 (2012).   "Significantly reduced mental capacity" in the context of sentencing means "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n.1 (2012).   Nothing in the record suggests that Petitioner was so limited; mental impairments and learning disabilities are insufficient.   To the contrary, Petitioner was found to "understand[] right from wrong" and to "appreciate[] that the behavior he allegedly exhibited in connection with these offenses would be considered by others to be both wrong and illegal."   Therefore, Petitioner's Motion should be

12

denied in this regard.

### 4.    Sentencing Enhancements

Finally, Petitioner asserts that the sentencing enhancement applied by the Court under U.S.S.G. § 2K2.1(b)(6) for possession of a firearm in connection with a drug trafficking offense was improper.   As Defendant asserts, Petitioner waived his right to appeal this issue through his Rule 11 Plea agreement.   *Keller*, 665 F.3d at 715-19.   And to the extent that Petitioner asserts this argument as part of his ineffective-assistance claim, his argument is, again, factually inaccurate. Petitioner's counsel devoted nearly four pages of his Sentencing Memorandum to this specific issue.   (Docket no. 62 at 2-4, 9.)   Thus, any assertion that Petitioner's counsel was ineffective for failing to raise an argument related to Petitioner's sentencing enhancement fails.

### E.    Conclusion

For the reasons stated above, Petitioner's Motion to Vacate under § 2255 [89] should be denied. The Court may, at its discretion, determine whether an application for a certificate of appealability should issue.   See 28 U.S.C. § 2253(c).

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report

and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:   April 13, 2015                    s/ Mona K. Majzoub
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on counsel of record and on Petitioner Michael Keller on this date.

Dated:   April 13, 2015                    s/ Lisa C. Bartlett
                                           Case Manager

14